Good morning, Your Honors. Mr. Dean. Police of Court, my name is Anna Williams, and I'm representing the appellant Nico Daniels this morning. He was sentenced to 70 months in prison for being a felon in possession of a firearm after the jury found him guilty at trial. He was arrested during the course of the police stop. They were searching for over that he was driving. Officers approached the car, weapons drawn, ordered him out, eventually arrested and handcuffed him. During the whole exchange, he was never Mirandized. At one point, Mr. Daniels moved to suppress statements made during this arrest. A couple of those statements were suppressed. However, he is appealing the fact that there was a statement about a gun in the vehicle and his parole status. Just prior to trial, there was a couple of motions in limine that were submitted. Mr. Daniels was trying to prohibit the government from introducing statements he made at a parole revoke hearing, and the government was trying to prohibit Mr. Daniels from introducing a prior conviction of another passenger in the This is what Mr. Daniels is seeking to reverse. First, we're going to address the statement about the gun that he made to the officer while he was in the car. Yes, Your Honor. The statement about the gun was after he'd already been arrested and was put in the squad car. He had stated that there was a gun under the seat. Right. Could you address why you think that should be suppressed? I think if you look at the totality of the circumstances, he's being questioned. There's questioning about the white female. There's questioning if he had a gun on his person. There's questioning if he had marijuana. At no point, and there's even a 21-year veteran of the force that's interacting with him during this time, nobody's reading him his rights. So our belief is that if you look at the totality, it's the functional equivalent of an interrogation, and that those should be suppressed, those statements. Can you describe? I'm not sure I've got the facts exactly right, but it looked to me like he motioned towards an officer who's not even there, not asking any questions, and directs him back over to the car, and then says, there's a gun under the seat. Is that what happened? And if that happened, why isn't that sort of quintessentially volunteered? Yes, Your Honor, that's somewhat what happened. So we're looking at all of the circumstances where he's being arrested. At that point, our belief is that the officer should have Mirandized him. Yeah. He allowed him to speak further. I think everyone will concede that it would have been a better police practice to have Mirandized him once he's handcuffed, right? But the question really isn't, you know, wouldn't it have been a better police practice? The question is, if there's no question pending, and there's no questioning going on, and there's no interrogation taking place, you know, and he volunteers his statement, now we suppress him. Why? I see Your Honor's point, you know, to an extent. I see the frustration here. The belief from Mr. Daniels' viewpoint, because it's viewed from him whether it's reasonable or not, is he's terrified. Guns are drawn. He maintains that he didn't see the gun until he's being pulled over. It's not his car. It's another passenger in the vehicle's car. He's probably worried. And he's, you know, intimidated and scared and just wants to express that, you know, to the police officers before they find it. Well, hadn't he already been questioned without Miranda rights about whether there was a gun in the car? He had been questioned, and this was suppressed by the district court. I know. He'd been questioned on whether there was a gun on his person. And didn't he lie about it and say no? Well, I don't think he had a gun on his person. Oh, you mean the question was only about whether he had it on his person, meaning physically in his possession, not whether he had it under his seat? I think that's where he understood it. Yeah, he was asked if he was armed and he understood. Yeah, if you have a gun on you or something to that effect. Well, I mean, if you have a gun, right, what, was he out of the car when they asked him that? I believe so. I'm a little fuzzy on that. Well, you would know the facts better than we would. Probably. Yeah, I believe he was out of the car because I believe they were asked to exit the vehicle pretty soon after they were pulled over. My recollection of it, and I'm not 100% certain, but as I was reading it, he was already out and handcuffed, or about to be handcuffed and patted down, right? It was pretty immediate when they, like the whole exchange I think was only like 8 to 10 minutes on the video. Yeah. I would like to move on to the reverse 404B issue. Because at trial, Mr. Daniel's belief is that he should have been allowed to present reverse 404B, and that's a little unusual because usually it's directed towards the defendant. But it is recognized that a defendant does have a right to establish his innocence by showing that someone else did this crime. That's essentially what he was seeking to do with the reverse 404B. And the reverse 404B is essentially the same standard as regular, ordinary 404B evidence. It should be relevant to a material issue, similar in kind and not overly remote in time to the crime charged, supported by sufficient evidence, and such that its potential prejudice doesn't substantially outweigh its probative value. First, Mr. Daniels submits that the evidence is relevant to a material issue. Basically, Mr. Ezekiel was also a felon in possession of a firearm before. It could tend to connect him to the gun offense. There's at some point three other people in the vehicle with Mr. Daniels, and the third party could have put the gun there. He was, he maintains he wasn't aware of the gun until he saw it during the stop. Second, Mr. Ezekiel's conviction is similar in time, and obviously the same thing, and temporarily proximate. Although it was 15 years prior, there have been some rulings by this court where evidence of a prior could come in for even longer periods of 16 years in the Strong case and 18 years in the Walker case. How is the case distinguishable from Battle? I'm sorry, I didn't hear you. I said, how is the case distinguishable from Battle? Yes, Your Honor. We feel like there is some distinguishing factors. In Battle, that defendant was seeking to put in evidence of a lot more issues. We're just looking at one. There was like over 20 charges that they were trying to put into evidence in Battle. We're just seeking to introduce one single conviction, so there's not going to be like a risk of confusion to the jury with just one prior. Moving on to the third point that where this kind of evidence could come in, there's sufficient evidence because there's a judgment, you know, you could have just filed the judgment from his prior. The fourth issue is the unfair prejudice prong is viewed in light of protecting a defendant, so we feel like this should have come in. I'm going to reserve the rest of my time for rebuttal. Very well, you may. Mr. Dean, we'll hear from you. May it please the court, my name is Dennis Dean, Assistant U.S. Attorney for the Arkadelphia Police Department. The facts with the stop are that the Arkadelphia Police Department stopped this vehicle. It was a felony stop, so they had their guns drawn. They ordered all the passengers out of the vehicle, including Mr. Daniels. When he was removed from the vehicle, brought to the rear of the vehicle, they questioned him about some marijuana because they smelled some marijuana on him. They questioned him about whether or not he was armed. I argued to Judge Hickey that that was, there was a public safety reason that they did that. She disagreed with me. She excluded that, but the statement made about the gun in the back of the car was a spontaneous utterance. He did call the officer over to him. He was trying to get his attention. The officer that actually arrived was a sergeant. He was a supervisor. He got there late. Mr. Dean, if he had a gun under his seat, would you say that he was armed? He denied it at the back, at the rear of the patrol car. Right, but do you think the truthful answer would have been, yes, I'm armed. I have a gun under my seat. I would consider that armed. All right, so then why wasn't the statement to the second officer a further response to the unwarned questioning? Because there was a gap and it was a different officer. That officer was asking him preliminary questions again for officer safety reasons to try to establish what was going on. Then Mr. Daniels was placed in handcuffs, put in the back of the sergeant. I know, but he'd already been questioned by the police about whether he was armed and he, as you just said, not told the truth. Suppose he felt an obligation to give a truthful answer, so he summoned the guy over and corrected his answer. Why wouldn't that be further elicited, further response to the unwarned questioning? I understand where you're going, Judge Carlton, but the point is that Sergeant Palmer was just walking by his patrol vehicle and Mr. Daniels was in the back hollering, trying to get his attention. He opens the car door and the appellant is arguing that the mere opening of the car door... Well, that's not the best argument. It's not that the car door opening was a question, it's that he'd already been asked the question. What if it had been the first officer walking by and he said... I would still argue that the gap in time would have ended that line of what the judge found out was excludable questioning, an excludable answer. A gap of time occurred and then he's in the back of the car, they're going about their investigation and then at that point he makes a spontaneous utterance. But again, the way that y'all have read the facts, you open the car door and he just starts talking at that point. Sergeant Palmer asked no questions of him. And again, the appellant in their brief says that there were psychological ploys and coercive police practices and I cannot fathom that opening a car door to check on somebody... He could have been having a medical condition or something. Sergeant Palmer has a duty to check on why this guy is trying to get his attention, that that in and of itself doesn't invoke the need for the officer to use Miranda warnings. No, I think the question is whether he was still responding to the question whether he was armed. I understand. Why else would he be volunteering this? No idea. I've never been in that situation. Right. But do you think we should infer that he was responding to the first question as opposed to absolutely not? Because he wasn't talking about the other things that the initial officer, the arresting officer mentioned, the marijuana in the car and the other things that he was... I think he asked him about marijuana in the car, where's this white girl, the one that was passing and they refer to it as the white girl because the other three occupants were African Americans. Where's this white girl who was passing the bad checks? Where's this marijuana and are you armed? You mean he only answered one of the three questions? Yes, your honor. And he had the facts and evidence are that he was sitting in the back of the car in a position where he could observe the officers searching the car and saw them rooting around in the car. So I think it was more responsive to the fact that, shoot, they're going to find this thing because it's just sitting on the floorboard of the car. I don't think the court can infer that it was in response to a question that was asked and I don't know the exact time of 15, 20 minutes prior. Moving on to the prior conviction of the backseat passenger. This has nothing to do with the defendant proving his case, the appellant. I think the battle case is very much on point. This is absolutely propensity evidence to try to show that, okay, he has a felony possession conviction. So he must have been the one to possess this gun even though it was in the front seat. The appellant cites to the Reed Seventh Circuit case to say reverse 404B can come in for defensive purposes if it tends to negate the defendant's guilt. But the court in Reed kept that evidence out. So I don't think that's the strongest case and it's out of the Seventh Circuit. You know, I hate to do this, but I'm looking at the suppression hearing testimony here and it looks to me like the officer testified, well, here's what he said, quote, I'm trying to remember. I know I asked him mainly about the white female and then we got through with that. And then before I patted him down, I asked him if he had a gun or any weed on him. And question, and what was the response to that question? He said no. And I asked, is it in the car or on you? He said the car. And so this is an odd thing, right? I mean, because the testimony is sort of all over the place in comparison to what the briefing is. And so we suppress the part where he says it's in the car, right, in response to the questioning. And then there's a volunteered statement later that's exactly the same statement and somehow it's but I believe what he was referring to was the marijuana because his girlfriend, the lady, the actual owner of the vehicle who was in the front seat had some marijuana on her. And she was actually, yeah, there was some question about rolling a blunt and all that. I get that. And so the it's in the car you think was referencing only the marijuana and testimony. Yes, your honor. I do. Testimony came out at trial that he actually, because at one point the officer said he was looking down and we were trying to infer that he was looking down at the gun to try to see if he could see it. And he, no, I'm sorry. He when he is Mirandized at the police station, he says that he's looking down, rolling a blunt. And so he freely admitted to being in possession of a misdemeanor amount of marijuana and engaging in that. And that's how we took that. Well, if you'd already answered about the marijuana, that sort of undercuts your argument that the statement about the gun was not an answer to the question because he didn't answer the other questions. There was no need to answer the on scene when those statements were made. And he's the one that Mr. Daniels was trying to get the attention of the sergeant. And he was the guy who was around. He was just walking around. Sergeant Palmer. I mean, that's therefore he's the officer available to get the attention. Yeah. Well, then you have the fifth statement where the officer that did arrest him, that he did make those initial statements to, he opens the car door and Mr. Daniels just spontaneously says, that was never asked. That had nothing to do with anything. So I think that tends to show evidence that he's just flapping his gums at this point. And he's just talking to these officers and he's nervous and scared and wants to try to help himself out or at this point, try to cooperate. What about this statement at the separate parole revocation hearing? Okay. Didn't he say there, didn't he make admissions there about this gun? He did. And I was interestingly enough, actually trial counsel in the Ramos case that the appellant sites that they rely on. Ramos is completely different than this issue. But it's just good before we go into how it's different. Remind me, what exactly did he say in this case at the state? He admitted that he did commit the crime of being a felon in possession of a firearm. Now granted there is a lower standard in an Arkansas parole revocation hearing, but under oath. So if that comes in then. The other thing would be harmless. It seems to be. So why don't you address why that should come in? It's distinguishable from Ramos. In Ramos, we were trying to get in just a parole, basically a piece of paper that said that he was waiving his right to a parole hearing, didn't want to contest it. There's all kinds of reasons why a defendant or accused would do that. Try to help themselves out and get less time. It's a lower standard of proof. In this case, though, Mr. Daniels took it upon himself to waive right to counsel to testify, even though he was advised he did not have to testify and to make statements that were in fact admissions that he did commit this very crime that he was eventually charged with federally. The appellant tries to argue that, well, he didn't know that he was going to, that this would be used against him in federal court. At this point, he hadn't been indicted in federal court, but he was advised that his for this matter. To argue the nuance of, well, he thought he was facing state court, but in reality, he ended up facing federal court, I don't think holds enough water to say that he didn't know what he was doing. This court in Farrington said that there's great difference given to the trial court in balancing probative versus prejudicial effect. The trial court did keep out the waiver consistent with Ramos, but did decide that his admission, that his statements would be able to come in to be used against him. Very well. Thank you. Thank you for your argument. Mr. Dean, Ms. Williams, you care to make rebuttal? Yes. Just briefly, your honor. Thank you. I'm just going to address, since I didn't get to it, the third argument having to do with the revoke hearing statements. Mr. Daniels is asking to extend Ramos. He feels that the testimony that was given there was definitely under a lower standard of proof. While he was asked if he wanted an attorney, if he had a trial of this matter, there'd be a FARETA analysis of it to determine if he was qualified to proceed with such issues pending. Yeah, but nobody holds a FARETA hearing in a that there's incompetence, right? That's true. And that's true in state court or federal court. So it's unsurprising that that's what happened. The real question is, is it's clearly an admission against interest and it's an admission to the elements of the crime. Why would that be inadmissible? We just think it would be more prejudicial than probative. Well, no, it's really the most probative thing there is. And prejudicial. And prejudicial. Whether it's unfair is the question. That is the question. It's definitely, and from Mr. Daniels' viewpoint, unfair prejudice. Putting the parole officer on the stand is going to hold a lot of weight with the jury. The standard of proof, they're going to assume it's already proof beyond a reasonable doubt once that officer starts testifying about it. And so we just feel like that mostly because of the standard of proof, the fact that he, you know, there's things that go on at a revocation hearing that you can't have at a trial of this matter. He's kind of decidedly guilty before he's able to prove otherwise. But he was told that he didn't have to make any statements, right? And he was told he did not have to testify. And he was told he had the right to a lawyer. And then he elected to make these particular statements. And your reason why that's not enough, that waiver doesn't doesn't matter, is because they didn't do a Ferretti hearing to determine whether he was competent to make those waivers, right? Yes. Okay. Thank you, Your Honor. All right, thank you both for your arguments. The case is submitted and the court will file an opinion in due course.